IN THE MATTER OF THE CLAIM FOR COMPENSA-
TION OF THE YELLOW TAXICAB COMPANY,
LIMITED, AN HAWAIIAN CORPORATION.

No. 1955.

ARGUED SEPTEMBER 23, 1930.        DECIDED SEPTEMBER 30, 1930.

PERRY, C. J., PARSONS, J., AND CIRCUIT JUDGE WATSON IN
PLACE OF BANKS, J., ABSENT.

OPINION OF THE COURT BY PERRY, C. J.

In a document over the signature of its secretary the
industrial accident board for the City and County of
Honolulu "certifies and reserves" to this court "for its
opinion and decision, the question of law as to whether or
not, under the facts hereinafter more particularly set
forth, the Yellow Taxicab Company, Limited, an Hawaiian
corporation, is an employer within the meaning of sub-
section (a), section 3663, of the Revised Laws of Hawaii,
1925, so as to render it amenable to the provisions of sec-
tion 3649 of the Revised Laws of Hawaii, 1925, relating to
the securing of compensation for its drivers." Continuing
in the same document, and under the title, "Statement of
Facts," the board says: "The Yellow Taxicab Company,
Limited, an Hawaiian corporation, owns and operates cer-

tain taxicabs for hire, which prior to its incorporation about a year ago went under the name of 'Yellow Taxicab Company' and 'Lewis Hawaiian Tours Company.' These taxicabs are operated by certain drivers selected by the general manager of the company under the provisions of an instrument entitled 'Automobile Lease,' of which the following is a copy:

'Automobile Lease

'Yellow Taxicab Co., Ltd., owner of that certain.......... automobile, license number ................, hereby leases said automobile to ..........................., on the following terms and conditions, namely:

'Said ...................................... is to use said automobile in the rent service only, at such rates, prices, charges, terms and conditions as he deems fit in dealing with his patrons and customers, in any part of the Territory of Hawaii; this lease to be in force for the period of six months from the date of execution hereof, unless renewed or extended in writing. Said lessee agrees in consideration of the leasing aforesaid, to pay to the said Yellow Taxicab Co., Ltd., as compensation therefor, a sum of money equal to seventy-five per centum of the gross receipts earned, whether actually collected or not, by said lessee.

'Witness our hands this ............ day of ................, 192.....

------------------------------------------------

------------------------------------------------

Witness:

................................,'

"Each of said drivers enters into a lease agreement of which the above is an exact copy, with the exception of variations in the name of the car, person and witness, the date, and the license number of the car. It is customary for all the drivers to report to the stand every day and to respond to telephone call orders.

"The company maintains a taxicab stand under its own name at which the drivers stand their vehicles while wait-

ing for fares, and employs a telephone operator, whose duty it is to take telephonic orders for taxicabs and relay them to the drivers in the order of their arrival at the stand. The company also employs an attendant whose duty it is to oil, grease and wash, free of charge, the taxicabs when the same require oiling, greasing and washing, and further furnishes all gas and oil consumed by said vehicles and keeps them in condition and repair.

"The drivers are required to pay to the company seventy-five per centum (75%) of the amount of the proper charge to any passenger and keep the balance of twenty-five per centum (25%) as their compensation. The average earning of each driver per month is from $75.00 to $100.00, or less than $36.00 per week, excluding pay for overtime.

"The telephone operator checks the meter readings of each taxicab as it goes out in the morning and as it comes in at the end of the day's run. One meter regulates the number of trips and another the mileage, as guided by the speedometer and a meter from the universal transmission box. There were formerly posted on the stand certain rules and regulations entitled 'for the benefit of Yellow Taxicab Company,' enjoining the driver to be polite to patrons and to be sober and to refrain from smoking while conveying passengers. A failure to conform to these rules would result in a meeting of the drivers being called and some form of discipline devised for the offending driver. Discipline is enforced by calling a meeting of all the drivers, who, with the approval of the general manager of the company, would devise some means of 'persuading' the offending member to desist from the practice or quit the service as the case may be."

. Under our statute (section 3641, R. L. 1925,) the industrial accident board "may certify questions of law to the supreme court for its determination." This language of the statute is clear and unambiguous. The intent of

the legislature was that only "questions of law" could be certified by the accident boards to this court for determination. If the questions of law desired to be certified arise upon facts appearing in evidence, the board must upon the evidence make its findings which give rise to the uncertainty as to the law. Questions of fact may not be reserved by this method of procedure for the determination of this court. If the findings made by the court are contradictory or insufficient or otherwise such as not to present clearly a definite question of law, that which is submitted does not call for a decision by this court.

The provisions of the lease referred to in the board's statement are clear. One of them is that the lessee or driver "is to use" the automobile "in the rent service only, at such rates, prices, charges, terms and conditions as he deems fit in dealing with his patrons and customers." The board, however, certifies as a fact that "the drivers are required to pay to the company," meaning the lessor, "seventy-five per centum (75%) of the amount of the *proper* charge to any passenger and keep the balance of twenty-five per centum (25%) as their compensation." What is meant by the word "proper" is not clear. It may mean a charge proper under some statute or ordinance, if there is any such, or it may mean a charge deemed proper by the lessor, or it may possibly mean a charge prescribed by the lessee. There is no other statement in the findings of fact to remove this doubt. It is, indeed, stated that "the telephone operator checks the meter readings of each taxicab as it goes out in the morning and as it comes in at the end of the day's run" and that "one meter regulates the number of trips and another the mileage, as guided by the speedometer and a meter from the universal transmission box," but there is no statement, other than appears above, indicating in whose power it is to prescribe the rates of fare to be calculated in conjunction with the mileage and the number of trips shown by the meter.

The board further states that "there were *formerly* posted on the stand certain rules and regulations" relating to the conduct of drivers. Whether those rules are still posted in the same place or places or whether they are now in force does not appear. If they are rules that were formerly but are not now in force, they would be of no materiality. The board further states that "a failure to conform to these rules *would result* in a meeting of the drivers being called and some form of discipline devised for the offending driver,"—which would seem to indicate that that was formerly but is not now the result of a violation of the rules. Another statement is that "discipline is enforced by calling a meeting of all the drivers who, with the approval of the general manager of the company, would devise some means of 'persuading' the offending member to desist from the practice or quit the service as the case may be." The word "persuading" appears in quotation marks in the board's statement, carrying perhaps an intimation that the board thought that the means of persuasion used on such occasions were not altogether lawful or proper and in fact amounted to duress.

If the board finds that the lease in fact states the terms of the contract between the taxicab company and the driver, it should say so. If it finds that the so-called lease is a mere subterfuge and a device for the avoidance of the workmen's compensation law, that also should appear. If it finds that one or more of the terms of the lease were modified by consent of both parties, that should be made to appear.

In view of the ambiguity and uncertainty of the board's statement, the reserved question is not answered or determined.

*Hoon Wo Wong,* deputy city and county attorney (also on the briefs), for the Industrial Accident Board.

*Marguerite K. Ashford* (Thompson, Beebe & Winn on the brief) for the Yellow Taxicab Co.